UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROGER BOTTS et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | CASE NO. C12-1943JLR<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION |

## I. INTRODUCTION

Before the court is Defendant United States of America's ("the Government") Federal Rule of Civil Procedure 12(b)(1) motion to dismiss Plaintiffs Roger and Carol Botts's Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680, claims under the discretionary function exception to the Act (Mot. (Dkt. # 13)). The court has reviewed the motion, all submissions filed in support of and opposition thereto, the balance of the record, and the applicable law. Having heard oral argument, and being fully advised, the court GRANTS in part and DENIES in part the Government's motion

ORDER- 1

1  to dismiss.  The court further STAYS discovery in this matter and DIRECTS the

2  Government to file a motion for summary judgment pursuant to Federal Rule of Civil

3  Procedure 56 within 30 days of the date of this order.

## II.    BACKGROUND

The Bottses bring suit against the Government for Mr. Botts's alleged exposure to asbestos at the Puget Sound Naval Shipyard ("PSNS") from "approximately 1965 through the mid 1970s" while he was working as a delivery driver for private trucking companies.  (Compl. (Dkt. # 1) ¶¶ 8, 13.)  Mr. Botts made deliveries to PSNS in three distinct periods.  From 1966 to 1971, Mr. Botts made food deliveries to PSNS approximately twice per week.  (Winn Decl. Ex. 2 (Dkt. # 34-2) at 6.)  During this time period, Mr. Botts entered ships that were being refurbished in order to find the personnel in charge of supplies and occasionally to help carry supplies onto the ship.  (*Id.* at 9-11.)  Mr. Botts states that each trip to the shipyard involved 10 to 12 deliveries to everything from the shipyard galley, to submarines, to aircraft carriers.  (Mot. Ex. 6 (Dkt. # 13-22) at 12.)  From 1971 to 1976, Mr. Botts ceased making food deliveries but continued making other deliveries to PSNS.  (Winn Decl. Ex. 2 at 7-8.)  Mr. Botts still occasionally entered the ships, although with less frequency than during the first period.  (*Id.*)  Between 1976 and 1981, Mr. Botts made less than five trips to PSNS.  (*Id.* at 12.)  Mr. Botts witnessed Navy personnel working on pipes and wrapping them with a white substance "quite a few times" while making deliveries to the ships.  (*Id*. at 3, 11.)  He recalls walking by locations where there was a "fair amount" of dust and debris from construction, and reports that the air on the ships was "kind of smoky and dusty."  (Winn Decl. Ex. 1 (Dkt.

# 34-1) at 13; Mot. Ex. 23 (Dkt. # 13-23) at 15.) He does not recall ever seeing anyone wearing a respirator while working on the pipes. (*Id.* at 18.) Mr. Botts also does not recall seeing any asbestos warning signs. (*Id.* at 20, 22.) He further reports that he was never advised to take any safety precautions while aboard ship. (Mot. Ex. 23 at 15.)

The parties have submitted testimony from other PSNS workers regarding asbestos work during the relevant time period. The testimony confirms that significant asbestos work took place at PSNS in the 1970s. (Fleshman Decl. (Dkt. # 20) ¶ 2.) One insulator who worked at PSNS starting in 1973 reports seeing "a range of implementation of asbestos controls" at PSNS from 1973 to 1976. (Rutzich Decl. Ex. 3 (Dkt. # 19-3) ¶ 3). He reports that in 1973, areas where asbestos work was being done were roped off, drapes were laid on the deck in the area, and warning signs were posted. (*Id.*) He further reports that, later on in the 1970s, plastic containment curtains were set up. (*Id.* ¶¶ 4, 5.) However, the asbestos dust was not fully contained and often escaped the containment area. (*Id.*) The testimony of other insulators seems to confirm this general pattern. (*See, e.g.*, Fleshman Decl.) However, no warning signs were placed outside of ships where asbestos work was being done to warn people in the general area of the asbestos danger. (*Id.* ¶ 7.) Furthermore, from 1970 to 1976, asbestos scraps were swept up rather than vacuumed. (*Id.* ¶ 4.)

Throughout this time period, the Navy developed regulations regarding asbestos safety measures. The Navy issued NAVSO P-2455 in April, 1965, which recommended the use of respirators by asbestos workers and vacuuming rather than sweeping up asbestos dust. (Beckett Decl. Ex. F (Dkt. # 13-7) at 21.) However, these regulations

ORDER- 3

were advisory rather than mandatory. (*Id.* at 20.) In March 1970, the Navy issued NAVMAT P-5100, which established mandatory regulations for asbestos installation and removal, requiring in relevant part that: (1) shipboard "ripout" of asbestos take place in designated exclusion areas, (2) persons accomplishing essential duties in those areas wear respirators, (3) "personnel" entering a designated exclusion area be "made aware" of the hazard, (4) asbestos removal areas be "confined by means of curtains, portable partitions, etc." from the rest of the ship to prevent dust from entering the rest of the ship, and (5) dust not to be "exhausted" into other areas on the ship. (*Id.* Ex. G (Dkt. # 13-8) at 23.) In February, 1971, the Navy issued NAVSHIPS Instruction 5100.26, requiring in relevant part for both asbestos removal and installation that: (1) asbestos areas be isolated "when possible," (2) adequate asbestos warning signs be posted, (3) persons entering asbestos work areas wear respirators if dust was present, and (4) decks and spaces contaminated by asbestos debris be vacuumed rather than dry swept. (*Id.* Ex. H (Dkt. # 13-9) at 5-8.) In 1972, the *Naval Ships' Technical Manual* incorporated asbestos control measures. (Beckett Decl. (Dkt. # 13-1) ¶ 14.) The measures included requiring all "personnel" exposed to asbestos dust during installation to wear respirators, requiring everyone in an asbestos removal zone to wear a respirator, and requiring that asbestos removal be accomplished in areas "confined by means of curtains, partitions, etc." (*Id.* Ex. I (Dkt. # 13-10) at 4.) In 1973, the Navy issued BUMED Instruction 6260.14, which was sent to all Navy medical commands. (Beckett Decl. (Dkt. # 13-1 ¶ 17.) It required, among other things, that caution signs be placed at each location where the concentration of asbestos might exceed a certain level and that "employees" engaged in the removal of asbestos

wear respirators. (*Id.* Ex. K (Dkt. # 13-4) at 3, 5.) The warning signs were required to be placed far enough from an asbestos site that "personnel" could read the signs and take appropriate action before entering the area. (*Id.*) In April 1974, the Chief of Naval Operations sent OPNAV Instruction 6260.14 to all naval commands, which mandated further similar asbestos controls, such as respirators for asbestos workers and warning signs at asbestos work sites. (Beckett Decl. (Dkt. # 13-1) ¶ 17; Beckett Decl. Ex. L (Dkt. # 13-13) at 2-8.)

### III. ANALYSIS

**A. Legal Standard**

This question comes before the court on the Government's Rule 12(b)(1) motion to dismiss. Under Rule 12(b)(1), the court must dismiss claims over which the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A factual attack is one in which "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* This motion raises a factual attack. "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id.* However, "[j]urisdictional finding of genuinely disputed facts is inappropriate when the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits of an action." *Id.* (internal quotation marks and citations omitted). Jurisdictional and substantive issues are intertwined when "a statute

provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief." *Id.* In *Safe Air for Everyone*, the Ninth Circuit held that a trial court erred by deciding a motion to dismiss for lack of jurisdiction as a Rule 12(b)(1) motion "because the jurisdictional issue and substantive issues in th[e] case [were] so intertwined that the question of jurisdiction [was] dependent on the resolution of factual issues going to the merits." *Id.* at 1040. The Ninth Circuit instead reviewed "the district court's order below not as a dismissal for lack of subject matter jurisdiction but rather as a grant of summary judgment on the merits." *Id.*; *See also Autery v. United States*, 424 F.3d 944, 956 (9th Cir. 2005) ("[W]here—as is the case here—the jurisdictional issue and substantive claims are so intertwined that resolution of the jurisdictional question is dependent on factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment.") (internal quotation marks omitted).

      The factual and jurisdictional issues are intertwined in this matter. The Government argues that the discretionary function exception applies to the exact actions by the Navy that the Bottses assert give rise to liability. (*Compare* Mot. at 23, *with* Compl. ¶¶ 18-20.) Thus, the court is prohibited from deciding disputed material facts going to both jurisdiction and the merits of this matter, and must treat this motion similarly to a motion for summary judgment. Thus, the court should grant this motion only if "there is no genuine dispute as to any material fact and the [Government] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears

the burden of showing that there is no material factual dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).

**B.     The Discretionary Function Exception to the FTCA**

Under 28 U.S.C. § 2680(a), the Government is exempt from FTCA liability incurred by a governmental actor performing its duties as mandated by a statute or regulation or performing or failing to perform a discretionary function.  28 U.S.C. § 2680(a).  The FTCA is a partial waiver of the Government's sovereign immunity.  "The FTCA waives the [Government's] sovereign immunity for tort claims arising out of negligent conduct of government employees acting within the scope of their employment."  *Terbush v. United States*, 516 F.3d 1125, 1128 (9th Cir. 2008).  "The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction."  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

"[T]he basis for the discretionary function exception was Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011).  However, "in order to effectuate Congress's intent to compensate individuals harmed by government negligence, the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly."  *Whisnant v. United States*, 400 F.3d 1177, 1184 (9th Cir. 2005). Furthermore, the Government bears the burden of proving the applicability of the discretionary function exception in each case.  *Myers v. United States*, 652 F.3d 1021,

1028 (9th Cir. 2011). There is a two-step test for determining whether the discretionary function exception applies.

### 1. Step One

As a first step, the court must determine, for each specific negligent action alleged by the Plaintiff, "whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action." *Green v. United States*, 630 F.3d 1245, 1249 (9th Cir. 2011). This step is satisfied "where no statute or agency policy dictates the precise manner in which the [governmental actor] is to complete the challenged task." *Bailey v. United States*, 623 F.3d 855, 860 (9th Cir. 2010). The step is not satisfied, however, "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (internal quotation marks omitted).

### 2. Step Two

If step one is satisfied, the Government still must show that the "judgment is of the kind that the discretionary function exception was designed to shield, namely, only governmental actions and decisions based on considerations of public policy." *Green*, 630 F.3d at 1249 (recognizing that the United States Forest Service's decision regarding how to fight a wildfire was subject to the discretionary function exception, but holding that the Forest Service's failure to notify private landowners of its intention to light a backfire near their property was not covered). "Only those decisions grounded in social,

economic, and political policy will be protected by the discretionary function exception." *Soldano v. United States*, 453 F.3d 1140, 1145 (9th Cir. 2006) (internal quotation marks omitted). "To be protected from suit, the challenged decision need not *actually* be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (internal quotation marks omitted; emphasis in the original).

In the context of safety precautions, "although an agency's decision to adopt certain safety precautions as opposed to others may be based in policy considerations, generally, the implementation of those precautions is not." *Bailey*, 623 F.3d at 861. "Safety measures, once undertaken, cannot be shortchanged in the name of policy." *Id.* However, when implementing safety measures implicates policy considerations by, for example, requiring the balancing of multiple safety priorities, the discretionary function exception will apply. *Id.* at 862. Generally, "a decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect." *Sutton v. Earles*, 26 F.3d 903, 910 (9th Cir. 1994).

**C.     Application to the Bottses' Claims**

As an initial matter, the court must examine whether the discretionary function exception applies to the Navy's procedures regarding asbestos work prior to March 1970, when NAVMAT P-5100 was issued. The only asbestos-work regulation that predates March 1970 that has been brought to the court's attention is NAVSO P-2455, which was issued in April, 1965. (Beckett Decl. ¶ 9.) NAVSO P-2455 provides that "precautions

ORDER- 9

which are not mandatory but are recommended or advisory in nature are indicated by use of the word *should*." (Beckett Decl. Ex. F at 20 (emphasis in original).) NAVSO P-2455 uses the word "should" in its asbestos regulations. (*Id.* at 21). Thus, prior to 1970, asbestos work regulations at PSNS were advisory rather than mandatory. This satisfies step one of the discretionary function exception, which requires determining "whether a federal statute, regulation, or policy mandated a specific course of action, or whether the government actor retained an element of judgment or choice with respect to carrying out the challenged action." *Green*, 630 F.3d at 1249. In order to satisfy step two, the Government must demonstrate that the discretionary choices made by the Navy regarding asbestos work prior to 1970 are of the sort that implicate public policy. *See id.* The Government convincingly argues that "the setting of priorities regarding safety measures is a quintessential policy choice." (Mot. at 30.) It is evident that, in a work environment involving construction, there are many hazards to worker health and safety that supervisors must balance and manage. This implicates considerations of public policy. *See Morgen v. U.S. Dept. of the Navy*, 323 F. App'x 515, 516-17 (9th Cir. 2009) ("The second [discretionary function exception] requirement is met because, given the many competing hazards at PSNS in 1963, decision to warn about or take precautions against potential exposure for those who were not working directly with asbestos involved the exercise of policy judgment."); *Whisnant*, 400 F.3d at 1184 (acknowledging that decisions regarding competing safety precautions are covered by the discretionary function exception); *see also In re Consol. U.S. Atmospheric Testing Litig.*, 820 F.2d 982, 995 (9th Cir. 1987) ("A court would be ill-equipped to evaluate the judgments concerning

1 safety made by those officials based on the exigencies of the moment."). Therefore, both
2 steps of the discretionary function test are satisfied, and the court dismisses the Bottses'
3 claims regarding asbestos exposure before March 1970.

4 However, in March 1970, the Navy issued NAVMAT P-5100 (Beckett Decl.
5 ¶ 11), which contains mandatory asbestos regulations (Beckett Decl. Ex. G at 22). Thus,
6 the court must inquire into whether these mandatory regulations cover the specific actions
7 challenged by the Bottses, or if the Navy retained discretion regarding the actions that
8 allegedly give rise to liability. The Bottses allege that the Navy failed to exercise due
9 care for Mr. Botts's safety by failing to prevent him from entering ships while asbestos
10 was released into the air. (Compl. ¶ 18.) Having reviewed the record in this case, it is
11 apparent that there was no regulation prohibiting Mr. Botts from entering a ship entirely
12 while asbestos was in the air. The lack of specific regulations regarding ship access
13 satisfies step one of the discretionary function exception because the Navy "retained an
14 element of judgment or choice" regarding whether to allow Mr. Botts aboard ship. *See*
15 *Green*, 630 F.3d at 1249. Step two of the test is satisfied because decisions regarding
16 who to allow aboard naval ships involve a mix of public policy considerations including
17 safety, security, and efficiency. Thus, this decision is "susceptible to a policy analysis."
18 *Nurse*, 226 F.3d at 1001. Both parts of the discretionary function exception test having
19 been satisfied, the court dismisses this specific claim regarding Mr. Botts simply entering
20 ships during asbestos work.

21 However, regarding the government's more general duty of care for Mr. Botts's
22 safety, starting in 1970, nonessential personnel were excluded from asbestos "rip out"

sites. (Beckett Decl. Ex. G at 23.) The 1971 regulations add in requirements for exclusion from asbestos installation sites. (*Id.* Ex. H at 7.) The government contends that there is no evidence that Mr. Botts ever encountered such an exclusion zone, especially post-1970.[1] (Mot. at 24-25.) However, the record indicates that asbestos installation and rip out occurred during the 1970s when Mr. Botts was present at PSNS. (*See* Fleshman Decl. ¶ 2.) Mr. Botts reports seeing personnel working on and wrapping pipes while aboard ship, although the record is unclear as to the exact timing of these events. (Winn Decl. Ex. 2 at 3, 11.) Furthermore, Mr. Botts reports that the air aboard ship was sometimes dusty. (*Id.* Ex. 1 at 13.) The Bottses claim that this evidence indicates that Mr. Botts must have been improperly permitted into mandatory isolation areas and that mandatory isolation requirement was not being followed. (*See* Resp. (Dkt.# 18) at 18-22.)

The Bottses further argue that mandatory asbestos containment measures were not followed at PSNS during the 1970s. (*Id.*) For example, naval regulations from 1971

---

[1] The government uses paragraph 14 the Beckett Declaration to support its assertion that Mr. Botts never encountered an asbestos exclusion zone because all asbestos exclusion zones were properly signed and isolated. Mr. Beckett worked in the Industrial Hygiene Division at PSNS from 1962 to 1998. (Beckett Decl. ¶ 2.) He asserts that "based on [his] experience and the collective experience of [the] Industrial Hygiene team, [he] can say with a high degree of confidence that rules and policies with respect to segregation and warning signs were followed at PSNS from at least 1970 onward." (Beckett Decl. ¶ 14). Mr. Botts asks the court to strike paragraph 14 of the Beckett Declaration because it is not based on Mr. Beckett's personal knowledge but rather the knowledge of the entire industrial hygiene team. (Response at 2 n.3.) However, the court does not address the admissibility of the Beckett Declaration at this point in the case. The Beckett Declaration is one piece of testimony among many, which taken together indicate that there is a genuinely disputed fact issue regarding whether the Navy followed its policies regarding asbestos work at PSNS in the 1970s. The court's conclusion regarding this motion would be the same regardless of paragraph 14 of the Beckett Declaration.

required that asbestos removal sites be "confined when possible by means of curtains, portable partitions, drop cloths, etc." from the rest of the ship. (Beckett Decl. Ex. H at 7.) Regulations from 1970 and 1972 required that asbestos removal sites be "confined by means of curtains, portable partitions, etc., so as to prevent excessive contamination of other areas." (Beckett Decl. Ex. G at 23; *id.* Ex. I at 4.) However, testimony of PSNS insulation workers indicate that asbestos work areas were usually only roped off. (Rutzich Decl. Ex. 3 ¶ 3.) This indicates that mandatory regulations requiring asbestos containment measures may not have been followed. Although the "etc." and "when possible" terms did give the Navy some leeway in how it contained asbestos exposure, reading those terms to indicate that simply roping off an area complies with the regulations stretches the plain language of the regulation. Roping off an area is different in type from the containment examples given ("curtains, portable partitions"), and does very little to achieve the regulations' stated dust-containment purpose. As a further example of broken regulations, new regulations in 1971 prohibited naval personnel from cleaning up asbestos debris by dry sweeping and mandated vacuuming. (Beckett Decl. Ex. H at 6, 7.) The testimony of former PSNS insulation workers demonstrates that this regulation was not consistently followed. (Fleshman Decl. ¶ 4.)

The discretionary function exception does not apply if, as the Bottses contend, the Navy violated specific regulations regarding asbestos safety. *See United States v. Gaubert*, 499 U.S. at 322 (holding that the discretionary function exception does not apply "if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to

ORDER- 13

the directive"). The Bottses and the Government genuinely dispute material facts regarding whether Mr. Botts ever encountered asbestos work areas while aboard ship and whether asbestos safety regulations were followed. The court is prohibited from deciding those facts because of the procedural posture of this motion. *See Safe Air for Everyone*, 373 F.3d at 1039. Thus, mimicking the procedural posture on a motion for summary judgment, the court must deny the Government's motion to dismiss pursuant to Rule 12(b)(1) with respect to claims originating from post-March 1970 asbestos exposure. *See Alfrey v. United States*, 276 F.3d 557, 562 (9th Cir. 2002) (reversing a trial court's grant of summary judgment based on the discretionary function exception because genuine dispute regarding material facts remained); *Olson v. United States*, 306 F. App'x 360, 363 (9th Cir. 2008) (reversing a trial court's Rule 12(b)(1) dismissal of a FTCA claim because genuine dispute existed regarding facts material to whether the discretionary function exception applied).

The Bottses further allege that the Navy failed to live up to its duty of care for Mr. Botts's safety due to its failure to warn him regarding asbestos exposure. (Compl. ¶¶ 18-20.) Beginning in 1970, Naval regulations required "personnel" entering asbestos removal, repair or installation areas to be "made aware" of the asbestos hazards.[2]

---

[2] The Government argues that the word "personnel" indicates that the 1970 regulations did not require the Navy to warn outside contractors about asbestos danger. (Mot. at 26.) Even if this indicates that the Navy had discretion in whether or not to warn Mr. Botts in 1970 and thus satisfies prong one of the discretionary function exception, prong 2 is not satisfied. "A decision not to warn of a specific, known hazard for which the acting agency is responsible is not the kind of broader social, economic or political policy decision that the discretionary function exception is intended to protect." *Sutton*, 26 F.3d at 910. Furthermore, by 1971, new regulations required

(Beckett Decl. Ex. G at 23.) The 1971 regulations specifically require warning signs at asbestos work sites. (*Id.* Ex. H at 5, 6.) By 1974, the regulations were more detailed, requiring signs at locations where airborne asbestos concentrations could exceed a certain level and requiring that those signs be far enough away from the work site that workers could read the signs and react appropriately before entering the area. (*Id.* Ex. K at 3, 5.) There is significant testimony that asbestos workers did place signs outside of asbestos work areas. (*See, e.g.*, Stip. Re: Franco Test. ¶ 2.) However, this same testimony admits "that there was a range of implementation of asbestos controls in place on the ships." (*Id.* ¶ 3.) Furthermore, Mr. Botts reports seeing what he concludes is asbestos work being done but not seeing any warning signs. (Winn Decl. Ex. 1 at 20, 22.) Thus, the existence of required asbestos warning signs is a disputed material fact in this matter. The Government argues that Mr. Botts must never have entered any asbestos work areas because he does not recall any warning signs. (Mot. at 27.) However, as the Bottses point out, another possible conclusion from those facts is that the Navy failed to consistently post warning signs around asbestos work. (Resp. at 20.) Although the exact placement of the warning signs in relation to the asbestos work site may have been discretionary, whether or not signs were placed was not discretionary. Thus, the court must deny the government's motion to dismiss with respect to the alleged post-March

---

the Navy to post warning signs around asbestos work sites. The requirement for warning signs eliminates the significance of any distinction between Navy personnel and outside contractors.

ORDER- 15

1970 asbestos exposure because the presence of asbestos warning signs is a disputed material fact. *See Alfrey*, 276 F.3d at 562; *Olson*, 306 F. App'x at 363.

The Bottses further claim that the government failed its duty of care for his safety by failing to issue him a respirator or other protection from inhaling asbestos dust. (Compl. ¶¶ 18-20.) The 1970 regulations require "ships force (crewmen) and others" entering the removal, repair and installation areas to wear respirators. (Beckett Decl. Ex. G at 23.) The 1971 regulations required that "persons" in asbestos installation and removal areas wear respirators "or leave the area" "if airborne asbestos dust is present." (Beckett Decl. Ex. H at 5, 6.) Mr. Botts testified that he encountered dusty air when on the ships and that he was never advised to take any safety precautions. (Mot. Ex. 23 at 15.) As illustrated above, there is a fact issue as to whether Mr. Botts ever entered any asbestos installation or removal exclusion areas. If Mr. Botts entered an asbestos exclusion area when dust was present in the air, the regulations would have required him to wear a respirator or leave. The Government argues that independent contractors at PSNS were never issued respirators by the Navy and were required to bring their own safety equipment. (*See* Mot. at 28.) However, this argument fails because the Navy was still responsible for enforcing its regulations, which required that everyone in an asbestos zone wear a respirator or leave, regardless of which party had the responsibility for providing the equipment. Thus, there is a disputed material fact regarding whether the Navy enforced its mandatory regulations with regard to requiring Mr. Botts to wear a respirator. Given that the court may not decide disputed material facts due to the procedural posture of the case, which mimics that of a summary judgment motion, the

ORDER- 16

court must deny the Government's Rule 12(b)(1) motion to dismiss with respect to alleged post-March 1970 asbestos exposure. *See Alfrey*, 276 F.3d at 562; *Olson*, 306 F. App'x at 363.

The Government cites *Morgen v. United States Department of the Navy*, 323 F. App'x 515 (9th Cir. 2009), to demonstrate that the discretionary function exception should apply to asbestos exposure at PSNS. However, *Morgen* is factually distinguishable from the present matter. In *Morgen*, the Ninth Circuit held that the discretionary function exception applies to asbestos safety procedures at PSNS in 1963 "because, in 1963, there were no statutes, regulations or policies in place at the Puget Sound Naval Shipyard ("PSNS") prescribing a specific course of action concerning asbestos . . . ." *Id.* at 516. In contrast, much of Mr. Botts's alleged asbestos exposure occurred later when there were mandatory policies regarding asbestos in place at PSNS. While asbestos procedures in 1963 do fall under the discretionary function exception, asbestos procedures do not fall under the exception following 1970, when mandatory regulations regarding asbestos were first issued.

In its Reply brief, the Government further argues that "it is speculative in the extreme for Plaintiffs to assert that Mr. Botts was injuriously exposed to asbestos resulting from any violation of a specific and mandatory self-imposed regulation." (Reply (Dkt. # 33) at 16.) In support of this contention, the Government cites *Anderson v. Asbestos Corp., Ltd., et al.*, No. 60271-3-I, 2008 WL 3273856 (Wash. Ct. App. 2008), which awarded summary judgment to a private defendant because "there [was] insufficient evidence that [the plaintiff] was ever on a ship at or near the same time as the

performance of any asbestos-related work." *Id.* at *2. First, *Anderson* is an unpublished state case. Second, the cause of Mr. Botts's disease is a fact issue to be decided by non-jurisdictional motion or at trial. Third, the Government admits that in *Anderson* "the plaintiff's sole basis for the argument of exposure was the general proposition that asbestos dust could drift over an entire shipyard." (Reply at 16.) In contrast, Mr. Botts entered ships and reported witnessing insulation work on pipes and encountering a dusty atmosphere. Thus, *Anderson* is factually distinguishable.

In sum, there is a disputed issue of material fact regarding whether Mr. Botts entered asbestos installation and removal exclusion areas and whether he was properly warned about those areas. If Mr. Botts did in fact enter such areas after March 1970, there were ample Navy regulations directly on point, which the Navy had no discretion but to follow, and the Government's argument fails at the first step of the discretionary function exception test. The court may not decide disputed material facts going to the merits of the case due to the motion's procedural posture, which mimics a motion for summary judgment. *Safe Air for Everyone*, 373 F.3d at 1039. Thus, the court must deny the Government's motion to dismiss pursuant to Rule 12(b)(1) with respect to alleged post-March 1970 asbestos exposure because the Government has failed to carry its burden of demonstrating that the discretionary function exception applies.

Despite prevailing on this motion, however, the Bottses have at this point in the matter presented a questionable case demonstrating that Mr. Botts's current illness was caused by asbestos exposure at PSNS after March 1970. Mr. Botts's contention that he was exposed to asbestos at PSNS after March 1970 is supported by three facts: (1)

asbestos work occurred at PSNS during the 1970s (*see, e.g.*, Fleshman Decl. ¶ 2), (2) Mr. Botts occasionally went aboard ships with unspecified frequency from 1971 to 1976 (*see* Winn Decl. Ex. 2 at 7), and (3) Mr. Botts witnessed workers doing unspecified work on pipes during an unspecified time period while aboard ship (*id.* at 3, 11). Furthermore, it is undisputed that Mr. Botts was exposed to asbestos in contexts other than PSNS. (*Id.* at 5.) The court concludes that further action in this matter would be counter to the interest of judicial efficiency given this case's facts as the parties have currently presented them to the court. The court finds that the Bottses would suffer no actual and substantial prejudice from staying discovery pending the resolution of a motion for summary judgment. *See Miles v. Pearson*, No. 11-16086, 2013 WL 3199302, at *1 (9th Cir. June 26, 2013) (holding that a district court did not abuse its discretion in staying discovery pending summary judgment); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (holding that a district court has discretion in limiting discovery absent "actual and substantial prejudice to the complaining litigant"); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (holding that a district court has wide discretion in staying discovery pending the resolution of other matters). For this reason, the court stays discovery[3] and directs the Government to file a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 within 30 days of the date of this order.

---

[3] The court, however, acknowledges the Bottses' prerogative pursuant to Rule 56 to "show[] by affidavit or declaration that, for specified reasons, [they] cannot present facts essential to justify [their] opposition" to summary judgment and request further discovery, if required. Fed. R. Civ. P. 56(d).

## IV.   CONCLUSION

For the forgoing reasons, the court GRANTS the Government's motion to dismiss for lack of subject matter jurisdiction with respect to Mr. Botts's pre-March 1970 claims and DENIES the Government's motion with respect to Mr. Botts's post-March 1970 claims.  The court further STAYS discovery in this matter and DIRECTS the Government to file a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 within 30 days of the date of this order.

Dated this 5th day of August.

JAMES L. ROBART
United States District Judge